IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PAMELA LeRETTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No.  11-1234-JAR |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Pamela LeRette's applications for disability benefits under Title II of the Social Security Act,[1] and supplemental security income benefits under Title XVI of the Social Security Act.[2]   Upon *de novo* review, the Court affirms the decision of the Commissioner.

## I.      Procedural History

In 2008, Plaintiff applied for disability benefits with a protective filing date of July 10, 2006.  Plaintiff's applications were denied initially and upon reconsideration.  Plaintiff timely requested a hearing before an administrative law judge ("ALJ").  After a hearing, the ALJ issued a decision finding that Plaintiff was not disabled; the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  Plaintiff then timely sought  judicial review before this Court.

## II.     Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is

---

[1]42 U.S.C. §§ 401–434.

[2]42 U.S.C. §§ 1381–1383f.

supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[3]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[5]

## III.   Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. "[6] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[7]  The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[8]  If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[9]

---

[3]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[4]*Id.* (quoting *Castellano*, 26 F.3d at 1028).

[5]*Id.*

[6]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[7]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[8]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

[9]*Id.*

2

**IV.      Discussion**

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[10] since July 10, 2006, the alleged onset date.  Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: bipolar disorder and post-traumatic stress disorder.  Although Plaintiff does not specifically challenge the ALJ's determination at step three that Plaintiff's impairments or combination of impairments do not meet or medically equal a listed impairment, Plaintiff does apparently challenge this determination to the extent it is based on the ALJ's alleged misinterpretation of the GAF scores and the extent of Plaintiff's limitations.

Plaintiff specifically challenges the ALJ's determination of her Residual Functional Capacity ("RFC") at step four, on the basis that the ALJ misinterpreted the evidentiary significance of Plaintiff's GAF scores, causing the ALJ to improperly analyze and discount a treating source's opinion.  The consequences of this misinterpretation, as well as the ALJ's unexplained reliance upon an "outdated" opinion by a state agency medical consultant, resulted in an RFC that failed to include adequate limitations based on Plaintiff's mental impairments. The Court addresses these arguments in turn.

### *Evaluation of Other Medical Source Opinion*

Plaintiff claims the ALJ erred, in the course of determining Plaintiff's RFC, when the ALJ expressly gave little weight to the opinion of Cookie Cork, a nurse practitioner who treated Plaintiff, while giving great weight to the opinion of a non-treating, non-examining physician, Dr. Schulman, who is a state agency medical consultant.  Medical opinions are to be considered

---

[10]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

by the ALJ, and unless a treating source opinion is given controlling weight, all medical opinions should be evaluated by the ALJ.[11]  Medical opinions are statements from physicians, psychologists or "other acceptable medical sources" about the nature and severity of the claimant's impairments.[12]  And while "acceptable medical sources" include licensed physicians, licensed or certified psychologists, licensed optometrists, licenses podiatrists, and qualified speech-language pathologists,[13] they do not include nurse practitioners.[14]  Rather, nurse practitioners are considered "other medical sources" from whom the ALJ will accept and use evidence showing the severity of a claimant's impairment and how the impairment affects the claimant's ability to work.[15]

Here, the ALJ did properly consider the medical source statement of Ms. Cork, as evidence from an "other medical source," but properly rejected Ms. Cook's medical source statement for several appropriate reasons.  First, Ms. Cook's March 22, 2010 medical source statement did not provide information about the severity and effect of Plaintiff's impairments.[16]  Rather, the statement was comprised of conclusory opinions rendered in the form of checked boxes on a form, listing a number of impairments and ratings of severity.  Ms. Cook checked boxes indicating that Plaintiff had "extremely limited" ability in two areas of functioning: interacting appropriately with the general public, and accepting instructions and responding

---

[11]20 C.F.R. § 416.927(d); SSR 96-5p, 1996 WL 374183 (July 2, 1996).

[12]20 C.F.R. § 416.927(a)(2).

[13] 20 C.F.R. § 416.913(a).

[14]20 C.F.R. § 416.913(d).

[15]*Id.*

[16]Doc. 10-12, R. at 566-568.

appropriately to criticism from supervisors.  Ms. Cook also checked boxes indicating that Plaintiff had "markedly limited" ability in twelve areas of functioning: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination with or proximity to others without being distracted by them; asking simple questions or requesting assistance; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; responding appropriately to changes in the work setting; traveling in unfamiliar places or using public transportation; setting realistic goals or making plans independently of others.  But Ms. Cook's medical source statement provides no narrative or explanation of these opinions, nor information about the severity of Plaintiff's impairment, other than these conclusory opinions.

Second, as the ALJ found, Ms. Cook's medical source statement is not supported by the evidence, and in particular the GAF scores.  Plaintiff's GAF scores, which beginning in 2006 were consistently 60, indicate that Plaintiff's impairment was moderate at worst.  Generally, GAF scores in the range of 61 to 70 indicate mild impairment and scores in the range of 51 to 60 indicate moderate impairment.  Plaintiff's consistent scores of 60 were just below the very low end of the mild range, and at the very top of the moderate range.  This is inconsistent with Ms. Cook's statements that Plaintiff had extreme limitations in two areas of ability and marked limitations in twelve areas of ability.  To be sure, GAF scores are not dispositive on the issue; they are a subjective clinical determination of the individuals' overall level of functioning.[17]

_____

[17]*See Chester v. Apfel*, 182 F.3d 931 (Table), 1999 WL 360176, at *3 n.1 (10th Cir. 1999).

And, GAF scores have no direct correlation to the severity requirements of the mental disorder listings.[18]  Yet, the GAF scores do not support Ms. Cook's opinions that Plaintiff had numerous marked and extreme limitations.

Moreover, this Court finds upon *de novo* review that the rest of the medical and non-medical evidence does not support Ms. Cook's opinions on the severity of Plaintiff's mental limitations.  While Plaintiff had a history of a suicide attempt while living in Texas in 2006 or 2007, by the time she began treatment at Valeo Mental Health Center in January 2008, she was improving and continued to improve or remain stable during the course of that treatment.  She had appointments at Valeo about every two months, although she missed several appointments because her memory failed her.  Nonetheless, the records of her course of treatment at Valeo throughout 2008 and 2009 reveal that she was often anxious and depressed and always reported problems with memory and concentration.  She episodically reported problems with irritability and anger, but these problems improved as her treating providers changed her medications or increased the dosages.  Plaintiff had mental status exams that consistently found her cognitively oriented, with organized thought and logical and coherent speech, appropriate affect, episodic fatigue and episodic high energy.  Her GAF scores were consistently 60.  At times Plaintiff reported problems with insomnia and racing thoughts, which were improved with medication, but may have also been due to her self-reported indulgence in ten cups of coffee a day, plus soft drinks.

At the same time, the medical records, as well as Plaintiff's testimony, reveal that despite her definite problems with concentration, memory, irritability and anger, she was able to enjoy

---

[18]65 Fed. Reg. 50746-01, 2000 WL 1173632 (Aug. 21, 2000).

daily activities, including driving, shopping, television, working on the internet, gardening, making regular trips to the library, and making purses that she sold at a farmer's market. Notably, until October 2009, Plaintiff worked for her brother who owned rental properties. Plaintiff cleaned the rental units, collected, accounted for and deposited rental checks, and showed the properties to prospective renters.  In October 2009, her brother terminated her because Plaintiff had difficulty performing these duties because of her problems with concentration and memory.  As more fully discussed below, Dr. Schulman, the state agency psychologist who reviewed Plaintiff's records, opined that these duties and responsibilities were too high-level for Plaintiff, but that she could understand and execute simpler instructions and tasks than these, despite her impairments in concentration and memory.

Finally, the Court finds unavailing Plaintiff's arguments that the Court should reverse the Commissioner's decision because the ALJ incorrectly characterized Plaintiff's GAF score of 60 as indicative of mild rather than moderate impairment.  As discussed above, the GAF scores are not determinative of disability.  Further, irrespective of the ALJ's characterization of that particular score as indicative of mild impairment, the ALJ rendered an RFC that found some moderate impairments, consistent with the evidence, including the opinion of the state agency medical consultant.  For this reason, there is no material error in the ALJ's mis-characterization of the GAF score.

### *Evaluation of State Agency Medical Consultant's Opinion*

While giving little weight to the conclusory opinion of the nurse practitioner, who did not qualify as an acceptable medical source, but as an "other medical source," the ALJ gave great weight to the medical opinion of an acceptable medical source in Dr. Schulman, the state agency

consulting psychologist.[19]  In so doing, the ALJ properly applied the factors the regulations

direct the ALJ to use in determining the weight to give to a medical opinion.  In  *Goatcher v.*

*U.S. Dep't of Health & Human Servs.*,[20] the Tenth Circuit directed the ALJ to consider the

following factors in determining what weight to give any medical opinion: (1) the length of the

treatment relationship and the frequency of examination; (2) the nature and extent of the

treatment relationship, including the treatment provided and the kind of examination or testing

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4)

consistency between the opinion and the record as a whole; (5) whether the physician is a

specialist in the area upon which an opinion is rendered; and (6) other factors brought to the

ALJ's attention which tend to support or contradict the opinion.[21]

Here, because Dr. Schulman was not a treating provider, the ALJ properly focused on

whether Dr. Schulman's opinions were supported by relevant evidence and consistent with the

record as a whole.  The ALJ found substantial evidence supporting Dr. Schulman's opinion that

Plaintiff has mild limitation in activities of daily living, and moderate limitations in maintaining

social functioning and in maintaining concentration, persistence or pace, and has had no episodes

of decompensation.  Upon *de novo* review, the Court agrees, as more fully discussed above, that

the medical evidence, as well as the nonmedical evidence in the form of Plaintiff's testimony and

statements, substantially supports Dr. Schulman's opinion, and thus substantially supports the

---

[19]*See Kizer ex rel. Kizer v. Barnhart*, No. 04-1394-JTM, 2006 WL 681115, at *4 (D. Kan. Mar. 14, 2006) (upholding the ALJ's decision to give substantial weight to the opinion of a state agency reviewing psychologist, noting that "[i]n appropriate circumstances, opinions from State Agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." (quotation omitted)).

[20]52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6))

[21]*Id.*  (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

ALJ's RFC determination, which mirrored Dr. Schulman's opinion.  Notably, Dr. Schulman did not just render conclusory opinions, he provided narrative explanations for his opinions, with are tied with the medical and nonmedical evidence in this case.  Dr. Schulman noted that was vocationally active working on rental properties, driving, shopping and doing ordinary chores. He further noted that although Plaintiff's ability to work for her brother was impaired by her concentration and memory, her brother expected her to perform relatively high functioning duties, such as interacting with the public, managing accounts, dealing with vendors and working with property maintenance; and that while Plaintiff was not able to perform those duties well, she was able to do "ordinary simple daily tasks as well as simple vocational tasks but not more complex vocational activities."[22]

Consistent with the evidence, Dr. Schulman also found and explained that Plaintiff had moderate limitations in her ability to understand,  remember and carry out detailed (but not short and simple) instructions, her ability to maintain attention and concentration for extended periods, and the ability to interact appropriately with the general public.  Based on all of the evidence, the Court finds substantial evidence supporting the assessment that Plaintiff can process simple tasks and instructions and learn to do routine and repetitive tasks, and can attend, concentrate, and maintain pace and persistence for this level of activity.  Similarly, there is substantial evidence supporting the findings that Plaintiff can interact with and be supervised by peers, adapt, avoid hazards, travel independently and make simple independent decisions.

Finally, Plaintiff challenges the propriety of giving Dr. Schulman's opinion such weight when Dr. Schulman's opinion was rendered in October 2008, and he did not have the benefit of

---

[22]Doc. 10-11, R. at 509.

reviewing the medical and non-medical evidence generated in 2009 and 2010.  But Plaintiff points to no evidence that her limitations and condition appreciably worsened or even changed in 2009 and 2010.  On the contrary, as discussed above, the evidence is that Plaintiff's condition remained stable and that the medications largely provided her with relief.  Overall her mental health did not change after Dr. Schulman rendered his opinion.  And, the ALJ properly considered not only the 2008 opinion of Dr. Schulman, but all of the evidence, including the medical and non-medical evidence generated in 2009 and 2010.

## V.    Conclusion

Because the ALJ properly discredited the conclusory opinion of the other medical source and properly gave weight to the substantiated medical opinion of Dr. Schulman, an acceptable medical source, the ALJ did not err in making the RFC determination.  Any mischaracterization of the severity of the GAF score was immaterial, for the ALJ's RFC determination included findings of moderate limitations, not mild limitations.  And, the ALJ relied upon all of the medical and non-medical evidence, including the evidence considered by Dr. Schulman in 2008, and the evidence generated in 2009 and 2010.  For these reasons, the Court concludes that the ALJ did not err in finding Plaintiff not disabled.  Accordingly the decision of the Commissioner will be affirmed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **AFFIRMED.**

**IT IS SO ORDERED.**

Dated: April 2, 2012

 S/ Julie A. Robinson                   
**JULIE A. ROBINSON**
**UNITED STATES DISTRICT JUDGE**

11